Gladys DOBSON, a single woman, Appellant,

v.

GULF SUPPLY COMPANY, Inc., et al., Appellees.

No. 14609.

Court of Civil Appeals of Texas.

Houston.

Feb. 17, 1966.

Rehearing Denied March 17, 1966.

Phelps, Kilgarlin & Snell, Jim S. Phelps, Houston, for appellant.

Bobbitt & Kraft, Karl E. Kraft, Houston, for appellees.

WERLEIN, Justice.

Appellant brought this suit to recover damages for personal injuries sustained by her in a rear-end collision at about 10:30 a. m. on March 13, 1962. One Joe F. Williams was joined as a party plaintiff in the suit but during the trial he took a non-suit.

Appellant testified in substance that while her car was stopped facing a red light at the intersection of Scott Street and Griggs Road in Houston, waiting for the traffic light to turn green, the rear end of her automobile was struck by a Chevrolet pick-up truck owned by appellee, Gulf Supply Company, Inc., and driven by its employee, one Q. L. Anderson. Anderson,

on the other hand, testified in substance that he had driven up behind appellant's automobile and had come to a stop without striking appellant's car, and that when the traffic light turned green appellant started up and he started the truck which struck the rear end of appellant's car when she came to a sudden stop before entering the intersection.

The jury, in answer to Special Issues, found that immediately prior to the collision Anderson failed to keep such lookout as an ordinarily prudent person would have kept in the exercise of ordinary care under the same or similar circumstances, and that such failure was a proximate cause of the collision in question. The jury did not find that Anderson failed to make a proper application of the brakes of the truck, nor did the jury find that Anderson while operating the truck was following the automobile being driven by appellant more closely than a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances immediately prior to the collision in question.

The jury also found that appellant brought her automobile to a sudden stop before entering the intersection after the signal light had turned green; that she failed to give such warning of her intention to stop her automobile as a person of ordinary prudence would have done in the exercise of ordinary care under the same or similar circumstances; and that such failure was a proximate cause of the collision in question. The jury found $329.00 for medical expenses incurred by appellant as a proximate result of the collision, and $3,500.00 for the personal injuries sustained by her. The court entered judgment on the jury verdict that appellant take nothing. Appellant's motion for judgment non obstante veredicto, and her amended motion for new trial, were overruled.

In her motion for judgment non obstante veredicto appellant alleged that there was no evidence that appellant failed to give ap-

pellee Anderson a warning of intention to stop, and further that even if she did fail to give a warning it would not be a proximate cause of the collision since said appellee would never have seen the warning because of his failure to keep a proper lookout. In her amended motion for new trial, appellant alleged that there was no evidence and insufficient evidence to support the jury's finding to Special Issue No. 7 that appellant brought her automobile to a sudden stop before entering the intersection after the signal light had turned green, and also that there was no evidence and insufficient evidence to support the jury's findings to Special Issues Nos. 8 and 9, respectively, that appellant failed to give such warning of her intention to stop her automobile as a person of ordinary prudence in the exercise of ordinary care would have done, and that such failure was a proximate cause of the collision in question.

The jury in finding in answer to Special Issue No. 7 that appellant brought her automobile to a sudden stop before entering the intersection after the signal light had turned green, manifestly accepted appellee's version of the manner in which the collision occurred. We cannot say that there is no evidence or insufficient evidence to support the jury's finding to such issue. No issue with respect to whether such sudden stop constituted negligence was requested or given, and hence there was no finding that such sudden stop constituted negligence on the part of appellant and, of course, no finding of proximate cause with respect thereto.

The question arises, however, as to whether or not the jury's answers to Special Issues Nos. 8 and 9 are supported by any evidence and if so whether such answers are against the great weight and preponderance of the evidence. Appellant's testimony is that her car was stopped at the time of the collision, waiting for the red light to change to green. Whereas Anderson's testimony was that the light turned green and appellant's car started up and then came to a sudden stop. Appellant and appellee Anderson were the only eyewitnesses who testified as to what occurred at the time and on the occasion in question. In order to determine whether there was any evidence to support the findings of the jury to such issues, it is necessary to analyze the testimony of Anderson. We quote Anderson's testimony as to what occurred:

Q   Now, when you and she were both moving up, how far were you from her when—how close were you to her when you were moving up? Did you have a car's length between you when you were moving up or were you bumper to bumper?

A   I wouldn't say bumper to bumper.

Q   How much distance was between you when you were moving up?

A   I would say about three feet or something like that.

Q   Did you see her brake lights come on?

A   I didn't pay that much attention. When she stopped I put my foot on the brakes and stopped.

Q   Did you see her brake lights come on?

A   I imagine they did.

Q   Did you see them come on?

A   No, I didn't see them come on.

Q   You say she stopped all of a sudden. If you didn't see the brake lights come on what made you—

A   I was watching her car.

Q   Watching the rear end of her car?

A   I was watching her car—I mean looking right at it when she stopped.

Q   Looking right at her car?

A   That's right, it was in front of me.

Q   You are telling us she stopped real fast?

A   She stopped all of a sudden.

Q When you stop a car real fast you skid your wheels on the pavement. Did you see any of that? Did she skid her wheels?

A No, I didn't see any of that.

Q What did you see that made you think she stopped real fast?

A I saw her car stop. I can see when a car is stopped.

Q What did you see that made you think her car stopped fast instead of slow?

A When she stopped, I can tell when a car stops.

Q What did you see that made you think it stopped fast instead of slow? What did you see?

A I saw the car stop all at once.

Q Did it sit down like this? (Demonstrating)

A It just stopped.

█ It thus appears from Anderson's testimony that when appellant's car started up, the distance between the vehicles was about three feet or something like that, and that when appellant stopped suddenly Anderson drove the truck into the rear of her car. As stated above, no negligence was predicated upon appellant's car coming to a sudden stop but only upon her failure to give a signal or warning of such stop. The burden of proving that appellant gave no warning of her intention to stop was upon the appellees. Anderson, when asked, "Did you see her brake lights come on?" testified, "I didn't pay that much attention." When he was asked a second time whether he saw appellant's brake lights come on, he testified, "I imagine they did." When asked a third time whether he saw her brake lights come on, he said, "No, I didn't see them come on." He said he was looking at appellant's car and he imagined that her brake lights came on,

although he didn't see them. He was saying in effect that he imagined or supposed or thought they came on but he didn't see them. See definition of "imagine" in Webster's New Collegiate Dictionary. He nowhere stated that the brake lights did not come on.

It is our view that appellee Anderson stated in effect that he didn't know what happened, whether the brake lights came on or not. He just imagined that they did. Certainly this was no evidence of probative force that appellant's brake lights did not come on. It is our view that appellees have failed to introduce any evidence whatever that appellant's brake lights did not come on, although the burden was on them to make such proof.

█ The law is well settled that in considering points of error challenging a jury verdict and a judgment based thereon on the ground of no evidence, an appellate court should disregard all testimony in conflict with the findings, and consider only that evidence most favorable to the answers of the jury, indulging every legitimate conclusion which tends to uphold the same. Barker v. Coastal Builders, 1954, 153 Tex. 540, 271 S.W.2d 798; Fisher Construction Co. v. Riggs, Tex.1959, 160 Tex. 23, 325 S.W.2d 126. On the other hand, if reasonable minds cannot differ from the conclusion that the evidence lacks probative force it will be held to be the legal equivalent of no evidence. Woods v. Townsend, 1946, 144 Tex. 594, 192 S.W.2d 884.

█ In applying the foregoing rules of law to the instant case, we are of the opinion that the answers of the jury to Special Issues Nos. 8 and 9 are not supported by any evidence of probative force. We have concluded, therefore, that the court should have granted appellant's motion to set aside such findings and should have entered judgment for appellant non obstante veredicto.

Appellees contend that the fact Anderson testified he didn't see appellant's brake lights come on although he was looking at

her car, is some evidence that the lights did not come on. We do not agree in view of Anderson's testimony as a whole. His statement that he imagined appellant's brake lights came on, coupled with his testimony that he did not pay that much attention, clearly indicates that he didn't know or remember what happened. Furthermore, there is no testimony by Anderson that he would have seen appellant's brake lights had they come on or that he could have seen appellant's brake lights from his position in the truck while following about three feet behind appellant's car. The fact that he was looking at appellant's automobile constitutes no evidence more than a scintilla that he was also looking at her brake lights.

■ If we assume without any proof thereof, that appellant's brake lights did not come on, such failure would not constitute a proximate cause of the collision in question in view of the fact that according to the testimony of appellee Anderson his truck was only three feet or thereabouts behind appellant's automobile. Nothing would have been accomplished by the brake lights coming on, since according to Anderson he was looking directly at appellant's automobile and applied the truck brakes immediately when appellant's car suddenly stopped. In following about three feet behind appellant's car he was too close thereto to stop regardless of the illumination or lack of illumination of appellant's brake lights. Hence the finding of the jury that appellant's failure to give a warning was a proximate cause of the collision is, for such reason also, not supported by any evidence of probative force.

In view of our holding, it is not necessary to consider appellant's other assignments of error. This Court is authorized and empowered to enter such judgment as the trial court should have entered. Judgment will be entered for appellant against appellees, jointly and severally, on the jury finding in the sum of $3,829.00 with interest at the rate of 6% per annum from date of judgment, November 20, 1964, and costs of court.

Reversed and rendered.